**IN THE COURT OF APPEALS OF IOWA**

No. 18-1352
Filed March 20, 2019

**IN RE THE MARRIAGE OF BRENDAN PAUL GIRSCHEK
AND JANICE GISELLE MARIN**

**Upon the Petition of
BRENDAN PAUL GIRSCHEK,**
      Petitioner-Appellant,

**And Concerning
JANICE GISELLE MARIN,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Brendan Girschek appeals the amount of the equalization payment the district court determined was due to Janice Marin in the dissolution of the parties' marriage. **AFFIRMED.**

Brandon M. Schwartz of Schwartz Law Firm, Oakdale, Minnesota, for appellant.

Allison M. Heffern and Kerry A. Finley of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee.

Considered by Vogel, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Brendan Girschek appeals the amount of the equalization payment the district court determined was due to Janice Marin in the dissolution of the parties' marriage. Upon our review, we affirm.

## I. Background Facts and Proceedings.

In October 2017, the district court entered a decree dissolving the marriage of Brendan Girschek and Janice Marin. Therein, the court noted the parties had executed a stipulation of settlement. The court found the stipulation was "fair and equitable," and the court fully adopted and incorporated the agreement into its decree. Attached to and referenced in the parties' stipulation is the parties' "Property Settlement Analysis" which lists the parties' assets and debts and assigns each to either Brendan or Janice. It provides for an equalization payment to Janice in the amount of $138,089.06.

Relevant here, the parties' stipulation states that the parties' Chicago, IL property

> shall become the exclusive property of Brendan and title to said real estate is hereby quieted in Brendan. Brendan shall assume all debts related thereto and shall hold Janice harmless from all debts and liabilities in connection with this property. Brendan shall list the property for sale within 30 days of the entry of the Decree. Janice shall sign a Quit Claim Deed to the property at the time of the closing on the real estate and shall fully cooperate with Brendan with regards to the sale. The listing price and sale price shall be within the exclusive control and discretion of Brendan.

The stipulation further states, concerning the equalization payment:

> Brendan will pay to Janice the total sum of $138,089.06 within ten (10) days of the closing on the sale of the Chicago real estate . . . if the home sells for $1,000,000.00. The equalization payment shall be adjusted based on the sale of the home to ensure an equal distribution of the marital property. It is the intent of the

parties that the equalization payment constitutes an equal distribution of the martial property. If this amount is not paid when due, it shall constitute a judgment drawing interest at 8% per annum, starting the day it is due. This judgment shall constitute a lien on the real estate awarded to Brendan under this stipulation. Janice shall promptly issue a satisfaction of judgment upon receipt of the lump sum payment.

The Chicago home sold in March 2018 for $926,500. Thereafter, Brendan filed a motion seeking approval of his distribution of proceeds from the sale of the Chicago home. Brendan explained "[w]ith closing costs, commissions and other necessary fees associated with the sale, including the pay-off of the . . . mortgage, there was $747,308.71 of seller debits to close on the sale. . . . Subtracting those costs from the sales price, Brendan stated the total funds realized from the sale was $179,318.12. In his overall distribution calculation, Brendan added all of the closing costs as debt to his column, which has the effect of having Janice take on half of those costs in the final property division. Brendan, taking into account the reduced sales price and the inclusion of sales costs as his debt, reasoned Janice was therefore entitled to $60,869.61 as the equalization payment.

Janice resisted and contested the amount calculated by Brendan. She pointed out there was nothing in the parties' property settlement analysis or stipulation that required Janice to pay any of the closing costs from the sale. Additionally, because the parties agreed in their stipulation that Brendan would pay for all debts and liabilities in connection with the property, the closing costs, as liabilities connected to the property, were not to be included in the calculation of

the equalization payment. She argued she was entitled to an equalization payment equaling $101,402.56.[1]

Following a hearing, the district court entered an order finding Janice was due an equalization payment of $101,339.26. The court explained:

> . . . [B]ased upon the settlement reached by the parties, the value of the [Chicago] property . . . should be the actual sale price of said property or $926,500.00. The indebtedness upon said . . . property . . . shall remain at $666,443.00. Based upon these amounts, the equalization payment due from petitioner to respondent shall be reduced to the sum of $101,339.26."

Brendan now appeals. He contends the district court "impermissibly rewrote the parties' stipulation and awarded [Janice] an unequal distribution of the marital property." Janice disagrees and requests appellate attorney fees. Our review is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018).

## II. Discussion.

Iowa Code section 598.21(5) (2017) requires marital property be divided equitably in dissolution-of-marriage cases. *See In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). "The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts," *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009), but it "is important to remember marriage does not come with a ledger," *In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007). While "it is generally recognized that equality is often most equitable," *Fennelly*, 737 N.W.2d at 102, "[e]quitable distribution depends upon the circumstances of each case," *Hansen*, 733 N.W.2d at 702. Notably,

---

[1] Janice used a $926,627.00 sale price in her calculation.

"although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005) (cleaned up).

On appeal, Brendan insists the parties' stipulation unambiguously required "an exactly equal distribution of their marital property," and to do so demands inclusion of the costs and fees associated with the sale of the property. However, the stipulation is silent as to whether costs relating to the sale are to be included in the calculation. In fact, the stipulation explicitly states in paragraph nineteen that if the home sold for one million dollars, Janice was to receive $138,089.06. The parties' property-settlement analysis, which was attached to and referenced in the parties' stipulation, determined Janice was to receive $138,089.06. It listed the value of the property as one million dollars with a mortgage of $666,443. There is nothing in the analysis indicating closing costs, realtor fees, or county taxes and HOA fees due at sale, were to be included in the equalization payment calculation or that the valuation of the property must be reduced by the costs related to its sale. Substituting the lesser sales price into the parties' own property-settlement-analysis table, the amount Janice is due to equalize the distribution of the parties' marital property is $101,339.06.[2]

Moreover, while it is true that a stipulation and settlement in a dissolution proceeding is a contract between the parties, the stipulation in-and-of itself "is not binding on the court." *In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012).

---

[2] $1,000,000 - $926,500 = $73,500 ÷ 2 = $36,750. $138,089.06 - $36,750 = $101,339.06.

The court can reject the parties' stipulation if the court were to find the stipulation unfair or contrary to law. *See id.* But once the district "court enters a decree adopting the stipulation, the decree, not the stipulation, determines what rights the parties have." *Id.* (cleaned up). Once accepted, it is the court's intent "that is relevant, not the intent of the parties." *Id.*

Here, the same district court judge entered the decree dissolving the marriage and adopting the stipulation. The same judge entered the ruling finding $101,339.26 was the amount of the equalization payment Janice was due after the sale of the Chicago home. Clearly the court's intent in the decree was to exclude the costs related to the sale and only include the sales price as the value in fashioning an equitable distribution of the parties' marital property. Based upon our review, we cannot say there has been a failure to do equity here. Consequently, we will not disturb the district court's ruling.

Janice requests appellate attorney fees. This court has broad discretion in awarding attorney fees on appeal. *See Okland*, 699 N.W.2d at 270. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Considering these factors, we award appellate attorney fees in the amount of $1975 to Janice.

### III. Conclusion.

Upon our review, we cannot say the district court failed to do equity in determining the amount Janice was due in equalizing the distribution of the parties' marital property. Accordingly, we affirm the decree and subsequent ruling in all

respects. We award appellate attorney fees in the amount of $1975 to Janice.

Any costs on appeal are assessed to Brendan.

**AFFIRMED.**