**IN THE COURT OF APPEALS OF IOWA**

No. 21-0580
Filed August 3, 2022


**IN RE THE MARRIAGE OF THOMAS EDWARD GRAY AND
NORMALEENA RAMIREZ GRAY n/k/a NORMALEENA RAMIREZ GREBE**

**Upon the Petition of
THOMAS EDWARD GRAY,**
        Petitioner-Appellee,

**And Concerning
NORMALEENA RAMIREZ GRAY n/k/a NORMALEENA RAMIREZ GREBE,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Pottawattamie County, Margaret

Reyes, Judge.


        Normaleena Ramirez Grebe appeals the district court's dismissal of her

application for rule to show cause on res judicata grounds.  **AFFIRMED.**


        P. Shawn McCann of McGinn, Springer & Noethe, P.L.C., Council Bluffs,

for appellant.

        Leslie A. Christensen, Omaha, for appellee.


        Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**VAITHESWARAN, Judge.**

The district court dismissed a contempt application arising from a claimed failure to pay spousal support. The court concluded the question was raised and decided in a prior action. We must decide whether that sole ground for dismissal was erroneous.

The issue arose following the divorce of Normaleena Ramirez Grebe and Thomas Edward Gray. The original dissolution decree did not provide for spousal support. In 2014, Grebe and Gray stipulated to the addition of spousal support language, and the district court filed a corrected order containing the following provision:

> [Gray] shall pay [Grebe] spousal support in the sum of $2500.00 per month beginning March 1, 2014, and continuing the first day of every month thereafter until [Gray] retires from military service; If [Gray] pursues a career in federal service following his military service career, then [Gray] shall continue to make monthly spousal support payments to [Grebe] in the sum of $2500.00, until he retires from federal service.[1]

Gray retired from military service approximately a year and a half after the stipulated order was filed. He stopped paying spousal support at that time. Gray then began working for a company that contracted with the federal government.

Grebe filed an application to modify the dissolution decree. She alleged Gray's employment with the federal contractor constituted "federal service" within the meaning of the 2014 order, requiring Gray to continue paying spousal support.

---

[1] The 2014 order also stated, "[U]pon [Gray's] retirement from military service, or federal service, if applicable, [Grebe] shall be entitled to 50% of the disposable military retired pay [Gray] would have received had [he] retired with a retired base pay of $8005.90 and with 21 years of creditable service."

Following a hearing, the district court denied the application without addressing the "federal service" issue.[2] Grebe did not appeal the order.

Within a few months, Grebe filed an application for rule to show cause, again alleging Gray "pursued a career in federal service following his military service career" and she was owed $122,500 for the forty-nine months of his employment with the contractor. She further alleged his failure to pay that sum amounted to a willful violation of the 2014 order.

Gray moved to dismiss the application on the ground that the acts Grebe alleged and the recovery she demanded were "the same" as the acts and recovery sought in the "prior" modification "action." He asserted Grebe "should be barred under res judicata from relitigating the spousal support issue which ha[d] already been decided by the Court." As noted at the outset, the district court concluded the question of "federal service" was raised and decided in the modification proceeding and Grebe could "not relitigate this issue in this matter." The court denied Grebe's motion to reconsider.

On appeal, Grebe argues she "should not be barred under res judicata because [she] is not relitigating the issue of spousal support but rather is simply requesting the court to enforce its 2014 stipulated order." The parties agree our review is for errors of law. *See Nazarchyk v. Talkington-Nazarchyk*, No. 09-1219, 2010 WL 2080115, at *2 (Iowa Ct. App. May 26, 2010).

"The doctrine of res judicata embraces the concepts of claim preclusion and issue preclusion." *Spiker v. Spiker*, 708 N.W.2d 347, 353 (Iowa 2006) (citation

---

[2] This record does not contain a transcript of the modification hearing.

omitted).  "The general rule of claim preclusion holds that a valid and final judgment on a claim bars a second action on the adjudicated claim or any part thereof." *Dorsey v. State*, 975 N.W.2d 356, 361 (Iowa 2022) (citation omitted).  "Issue preclusion prevents parties from relitigating issues already raised and resolved in a prior action."  *Clark v. State*, 955 N.W.2d 459, 464 (Iowa 2021).

"The fundamental underpinning of res judicata is that there must be separate lawsuits filed."  *Scheuermann v. Gumm*, No. 12-1946, 2013 WL 3458185, at *5 (Iowa Ct. App. July 10, 2013); *see also Spiker*, 708 N.W.2d at 353 ("The general rule of claim preclusion provides a valid and final judgment on a claim precludes a *second action* on that claim or any part of it." (emphasis added) (citation omitted)); *Clark*, 955 N.W.2d at 464 ("Issue preclusion prevents parties from relitigating issues already raised and resolved in a *prior action*." (emphasis added)).  The parties do not address the question whether the modification proceeding was a separate action from the contempt proceeding.  Accordingly, we need not address it.  *See Scheuermann*, 2013 WL 3458185, at *5 (stating a plaintiff could not assert claim preclusion where the defendant filed an "application in the same action"); *cf. In re Marriage of Rathe*, 521 N.W.2d 748, 750 (Iowa 1994) (concluding an application to have a person held in contempt for nonpayment of child support filed in one county was "merely an adjunct to" a dissolution-of-marriage action filed in a different county; the application needed "to be pursued only within the original [dissolution-of-marriage] proceeding"; and "[w]e do not think the legislature intended for bifurcation of disputes concerning support, modification, or other matters that may arise within a [dissolution-of-marriage] proceeding"); *but see In re Marriage of Engler*, 532 N.W.2d 747, 750, 750 n.2 (Iowa

1995) (holding Iowa Code "section 598.25[3] allows a party subject to an Iowa dissolution decree to seek to modify that decree in a court other than the district court entering the dissolution decree," and distinguishing *Rathe* based on the statutory provision). For purposes of our analysis, we will assume the modification proceeding was a "prior action."[4]

The doctrine of issue preclusion "prevents a party to a prior action in which a judgment has been rendered from relitigating in a subsequent action issues raised and resolved in the previous action." *Penn v. Iowa State Bd. of Regents*, 577 N.W.2d 393, 398 (Iowa 1998) (citation omitted). The court's ruling in the modification action did not answer the question whether Gray's employment with the contractor amounted to "federal service." Instead, the court focused on Grebe's financial circumstances and her ability to meet her expenses with retirement pay. Ultimately, the court concluded Grebe failed to establish a substantial change of circumstances warranting a modification of the decree. Because the "federal service" question was not decided, issue preclusion was inapplicable. *See Lake Panorama Servicing Corp. v. Cent. Iowa Energy Coop.*,

---

[3] The provision states in pertinent part:
> Whenever a proceeding is initiated in a court . . . for modification of a judgment of alimony . . . granted in an action for dissolution of marriage, [certain] requirements must be met if such proceedings are initiated in a court other than the court which granted the dissolution decree.

Iowa Code § 598.25 (2021).

[4] The supreme court has also addressed the nature of an "action" in the statute-of-limitations context. *See Dakota, Minn. & E. R.R. v. Iowa Dist. Ct.*, 898 N.W.2d 127, 136 (Iowa 2017) ("An application to show cause is a means of seeking a court's redress; it thus initiates a 'proceeding.' Because the process initiated by an application to show cause is a 'proceeding,' we conclude it constitutes an 'action' within the meaning of section 614.1."), *overruled on other grounds by TSB Holdings, L.L.C. v. Bd. of Adjustment*, 913 N.W.2d 1, 10–14 (Iowa 2018).

No. 98-2267, 2001 WL 1014805, at *7 (Iowa Ct. App. Sept. 6, 2001) ("[T]he issue . . . was never decided by the bankruptcy court. . . . Because the bankruptcy court never determined the [issue], the district court correctly determined that no basis for an instruction on issue preclusion existed."); *see also Dorsey*, 975 N.W.2d at 361 (refusing to apply issue preclusion to the defendant's state constitutional claims where the defendant's "2014 motion to correct an illegal sentence raised federal and state constitutional claims, but the district court's order addressed only [defendant's] federal claim").

We turn to claim preclusion. Although the district court did not address claim preclusion in granting Gray's dismissal motion, Gray raised the elements of claim preclusion in his motion and reprises the theory on appeal. Accordingly, we may affirm on this alternative basis. *See DeVoss v. State*, 648 N.W.2d 56, 62–63 (Iowa 2002).

Claim preclusion applies when: "(1) 'the parties in the first and second action were the same;' (2) 'the claim in the second suit could have been fully and fairly adjudicated in the prior case;' and (3) 'there was a final judgment on the merits in the first action.'" *Spiker*, 708 N.W.2d at 353 (citation omitted). There is no question the first and third elements were satisfied. The only question is whether the second element was satisfied.

In deciding whether the "federal service" question could have been fully and fairly adjudicated in the modification proceeding, we begin with the proposition that "the district court retains authority to interpret and enforce its prior decree." *In re Marriage of Morris*, 810 N.W.2d 880, 886 (Iowa 2012). "A party need not demonstrate a change in circumstances when the party seeks only to clarify the

terms of the dissolution decree." *Christy v. Lenz*, 878 N.W.2d 461, 465 (Iowa Ct. App. 2016); *In re Marriage of Shipley*, No. 15-1418, 2016 WL 757416, at *2 (Iowa Ct. App. Feb. 24, 2016) (same).

In *Morris*, the court concluded a party was "not seeking to impermissibly modify the dissolution decree" when she sought interpretation of an ambiguous provision in the decree. 810 N.W.2d at 886*; see also In re Marriage of Lawson*, 409 N.W.2d 181, 183 (Iowa 1987) (noting "the action to establish petitioner's rights . . . is in the nature of a modification"); *In re Marriage of Heath-Clark & Clark*, No. 15-0525, 2016 WL 2753779, at *3 (Iowa Ct. App. May 11, 2016) (finding no jurisdictional concern where party was not requesting a modification of the property division but a modification of a qualified domestic relations order "to conform to the property division as set forth in the decree"). We turn to the modification record in this case.

As noted, Grebe alleged Gray's employment with the federal contractor constituted "federal service" within the meaning of that order. The phrase "federal service" required interpretation of the 2014 order. Grebe asked Gray to answer interrogatories on the issue. Gray provided detailed responses as well as a letter from his employer addressing the issue. We conclude the federal service issue was before the modification court, all parties had notice of it, and the court could have fully and fairly adjudicated it.

Having concluded the second element of claim preclusion was satisfied and the first and third elements were undisputed, we further conclude the litigation in the modification proceeding barred Grebe from raising the federal service question

in her contempt application.  Accordingly, the district court did not err in granting Gray's motion to dismiss the contempt application.

**AFFIRMED.**